IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON REFINING LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| UNITED STEEL, PAPER AND | § | CIVIL ACTION NO. H-12-2416 |
| FORESTRY, RUBBER, MANUFACTURING, | § | |
| ENERGY, ALLIED INDUSTRIAL AND | § | |
| SERVICE WORKERS INTERNATIONAL | § | |
| UNION and UNITED STEELWORKERS | § | |
| LOCAL UNION NO. 13-227, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Houston Refining LP ("Houston Refining") brings this action against United Steel, Paper and Forestry, Rubber, Manufacturing Energy, Allied Industrial and Services Workers International Union and United Steelworkers Local Union No. 13-227 (collectively, the "Union") to vacate an arbitration award. The court has jurisdiction over this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Pending before the court are the Union's Motion for Summary Judgment (Docket Entry No. 13) and Houston Refining's Motion for Summary Judgment (Docket Entry No. 15). For the reasons explained below, the Union's motion will be granted in part and denied in part, and Houston Refining's motion will be denied.

# I.  **Background**

## A.   **Underlying Dispute**

In January of 2009 Houston Refining and the Union were bound by a collective bargaining agreement (the "2006-09 CBA").[1]  Under Article 40 of the 2006-09 CBA Houston Refining employees were "eligible to participate" in various benefit plans, including a 401(k) plan.[2]  Article 40 further provides that:

> During the term of this Agreement, [Houston Refining] will provide advance notice of proposed changes to the benefit plans covered by the Agreement.   [Houston Refining] will meet with the Union for the purpose of explaining and discussing the proposed changes.

> A reasonable time period will be provided for the Union to elect inclusion in or exclusion from the amended benefits plan.   If the Union elects exclusion, repre- sented employees shall continue participation in the existing, unchanged benefits plan for the term of the Collective Bargaining Agreement.[3]

Article 30 of the 2006-09 CBA allows for arbitration for the resolution of employee "grievances."[4]  The term "grievance" is defined as "any difference regarding wages, hours or working

---

[1]Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14, p. 2; Houston Refining's Motion for Summary Judgment, Docket Entry No. 15, p. 4.  The agreement was effective originally through January 31, 2006, see Articles of Agreement, Ex. 4 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-5, art. 2, ¶ 1, and by extension through January 31, 2009.  See 2005 Extension Agreement, Ex. 4 (cont.) to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-6, [p. 39].

[2]Articles of Agreement, Ex. 4 (cont.) to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-6, art. 40, § III, ¶ 1.

[3]Id. ¶ 5.

[4]Id. art. 30.

conditions between the parties or between [Houston Refining] and an employee covered by this Agreement."[5]   Under Article 30 the "arbitrator shall consider only employee . . . grievances arising under the application of the currently existing Agreement."[6]

The 2006-09 CBA was set to expire on January 31, 2009.[7] Unable to agree on the terms of a new CBA prior to that expiration date, the parties instead entered into a rolling extension agreement ("REA").[8]   The REA extended the 2006-09 CBA "on a day-to-day basis subject to a 24-hour notice of canceling the extension."[9] In February of 2009 the parties reached a tentative agreement on the terms for a new CBA (the "2009-12 CBA"); due to a dispute over certain language, however, the 2009-12 CBA never went into effect.[10]

Houston Refining filed a bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York in January of 2009.[11]   In March of 2009 Houston Refining

---

[5]Id. art. 30, ¶ 1.

[6]Id. ¶ 7(b).

[7]2005 Extension Agreement, Ex. 4 (cont.) to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-6, [p. 39].

[8]Rolling Extension Agreement, Ex. 5 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-7.

[9]Id.

[10]Affidavit of  Gene Oliver, Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14-1; Houston Refining's Motion for Summary Judgment, Docket Entry No. 15, p. 5.

[11]Declaration of Mindy Davidson, Ex. 1 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-1, ¶ 4.  Houston Refining filed the petition with its parent company, Lyondell Chemical Company.  Id.

informed the Union that match contributions to employees' 401(k) plans would be suspended.[12]   The Union filed a grievance with Houston Refining on May 11, 2009, complaining that the unilateral suspension of the 401(k) match violated the 2009-12 CBA and demanding that the match be reinstated.[13]   Houston Refining contended that the matter was not grievable and refused to reinstate the match.[14]   In November of 2009 the Union filed an adversary proceeding in the Bankruptcy Court, seeking to compel Houston Refining to arbitrate the grievance.[15]   The Union amended its complaint to add a claim that the suspension of the 401(k) match violated the 2006-09 CBA.[16]   In support of this claim the

---

[12]Affidavit of Gene Oliver, Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14-1; Declaration of Mindy Davidson, Ex. 1 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-1, ¶ 5.

[13]Affidavit of Gene Oliver, Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14-1; Grievance 01-12-09, Attachment No. 1 to Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment.

[14]Declaration of Mindy Davidson, Ex. 1 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-1, ¶ 6.

[15]Affidavit of Gene Oliver, Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14-1; Declaration of Mindy Davidson, Ex. 1 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-1, ¶ 6.

[16]Affidavit of Gene Oliver, Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14-1; Excerpts from 20 September 2010 Hearing Before United States Bankruptcy Judge Gerber, Attachment No. 3 to Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14-1, p. 30:14-15.

Union argued that when the grievance arose the 2006-09 CBA remained in effect pursuant to the REA.[17]

During the pendency of the bankruptcy proceeding Houston Refining and the Union entered into an agreement to submit the grievance to arbitration (the "Settlement Agreement").[18]   The Settlement Agreement includes the following terms:

> 1.   The parties agree to proceed to arbitration with the grievances that are the subject of the Actions expeditiously and in compliance with the arbitration procedures, including the time frames, in the applicable collective bargaining agreements.
>
> . . . .
>
> 4.   At arbitration, the parties shall reserve all rights to present any and all arguments and advance any and all defenses to them including, without limitation, arguments concerning whether or not an applicable collective bargaining agreement was in effect at the time that a particular grievance arose.[19]

The Bankruptcy Court approved the Settlement Agreement on June 13, 2011, and the parties were directed to arbitration.[20]

---

[17]Affidavit of Gene Oliver, Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14-1.

[18]Affidavit of Gene Oliver, Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14-1; Declaration of Mindy Davidson, Ex. 1 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-1, ¶ 7.

[19]Settlement Agreement, Ex. 12 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-14, p. 1.

[20]Affidavit of Gene Oliver, Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14-1; Declaration of Mindy Davidson, Ex. 1 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-1, ¶ 7.

**B.   Procedural History**

The parties participated in an arbitration hearing on February 23-24, 2012.[21]  Houston Refining argued that the grievance was not arbitrable because there was no CBA in existence when the 401(k) match was suspended.[22]  Houston Refining further argued that even if the terms of the 2006-09 CBA were extant pursuant to the REA, the arbitration clause in the 2006-09 CBA did not cover the grievance.[23]  The arbitrator was not persuaded.  The arbitrator found no evidence that either party had exercised its right to cancel the REA and therefore concluded that the REA "was in effect at the time the grievance occurred and at the time the grievance was filed, therefore the [2006-09] CBA would be the contract giving authority for the grievance to be arbitrated."[24]  The arbitrator applied the terms of the 2006-09 CBA to determine whether the match suspension[25] violated the parties' agreement.[26]  Citing Article 40

---

[21]Affidavit of Gene Oliver, Ex. A to Appendix to Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14-1; Declaration of Mindy Davidson, Ex. 1 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-1, ¶ 7.

[22]Houston Refining's Motion for Summary Judgment, Docket Entry No. 15, p. 9.

[23]Id.

[24]In the Matter of Arbitration Between Lyondell Basell-Houston Refining LP and United Steelworkers Local Union No. 13-227 ("Arbitrator's Decision"), Ex. K to Complaint, Application to Vacate Arbitration Award & Memorandum of Law in Support ("Complaint"), Docket Entry No. 1-12, p. 23.

[25]The arbitrator concluded that the challenge to the suspension of the 401(k) match constituted a "grievance" because the match
(continued...)

of the 2006-09 CBA the arbitrator concluded that Houston Refining had properly provided "'advance notice'" of the changes to the 401(k) plan.[27]  The arbitrator further concluded that the Union had properly elected "'exclusion'" and that Houston Refining had therefore violated the 2006-09 CBA by suspending the 401(k) match.[28]

Houston Refining filed this action on August 10, 2012, seeking to vacate the arbitrator's award.[29]  The Union contends that the award should be enforced.[30]  On February 1, 2013, the parties filed the pending cross-motions for summary judgment.[31]  The parties then filed responses in opposition to, and replies in support of, each motion.[32]

---

[25](...continued)
program had "monetary value" to the employees and therefore was a "form of wages."  Id. at 28.

[26]Id. at 49.

[27]Id. at 50 (quoting Articles of Agreement, Ex. 4 (cont.) to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-6, art. 40, § III, ¶ 5).

[28]Id.  The arbitrator quoted from the 2006-09 CBA:  "'If the Union elects exclusion, represented employees shall continue participation in the existing, unchanged benefits plan for the term of the Collective Bargaining Agreement.'"

[29]Complaint, Docket Entry No. 1.

[30]Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14, p. 6.

[31]Union's Motion for Summary Judgment, Docket Entry No. 13; Houston Refining's Motion for Summary Judgment, Docket Entry No. 15.

[32]Houston Refining's Response to Union's Motion for Summary Judgment ("Houston Refining's Response"), Docket Entry No. 16; Union's Reply to Houston Refining's Response to Union's Motion for
(continued...)

## II.  **Applicable Law**

### A.  **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure mandates summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 349 (5th Cir. 2005).  When the nonmoving party bears the burden of proof at trial, the moving party may satisfy its burden by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2554 (1986).  Rule 56 does not require the movant to negate the elements of the nonmovant's case.  Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

Once the movant has carried this burden, the nonmovant must show that material facts exist over which there is a genuine issue for trial.  Reyna, 401 F.3d at 349 (citing Celotex, 106 S. Ct. at 2553-54).  The parties may support the existence or nonexistence of

---

[32] (...continued)
Summary Judgment ("Union's Reply"), Docket Entry No. 18; Response to Houston Refining's Motion for Summary Judgment ("Union's Response"), Docket Entry No. 17; Houston Refining's Reply to Union's Response to Motion for Summary Judgment ("Houston Refining's Reply"), Docket Entry No. 19.

a genuine fact issue by either (1) citing to particular parts of
the record, including depositions, documents, electronically stored
information, affidavits or declarations, admissions, and interroga-
tory answers, or (2) showing that the materials cited do not
establish the absence or presence of a genuine dispute or that an
adverse party cannot produce admissible evidence to support the
fact. Fed. R. Civ. P. 56(c)(1)(A)-(B). In reviewing this evidence
"the court must draw all reasonable inferences in favor of the
nonmoving party, and it may not make credibility determinations or
weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc.,
120 S. Ct. 2097, 2110 (2000).

**B. Vacatur of Arbitral Award**

Judicial review of an arbitral award under Section 301 of the
LMRA is "extremely limited." Weber Aircraft Inc. v. Gen.
Warehousemen and Helpers Union Local 767, 253 F.3d 821, 824 (5th
Cir. 2001). The party moving to vacate the award has the burden of
proof. Lummus Global Amazonas S.A. v. Aguaytia Energy del Peru,
S.R. Ltda., 256 F. Supp. 2d 594, 604 (S.D. Tex. 2002). Where an
award arises from the terms of a CBA a court may not vacate the
award if the decision "'draws its essence from the collective
bargaining agreement'" and -- in making that decision -- the
arbitrator did not fashion "'his own brand of industrial justice.'"
Weber, 253 F.3d at 824 (quoting United Paperworkers Int'l Union v.
Misco, Inc., 108 S. Ct. 364, 370 (1987). That an arbitrator

-9-

"'committed serious error'" is not a sufficient ground for vacatur if the arbitrator did not exceed his authority. Beaird Indus., Inc. v. Local 2297, Int'l Union, 404 F.3d 942, 944 (5th Cir. 2005) (quoting Misco, 108 S. Ct. at 371). If the court determines "that the arbitrator has acted within the ambit of his authority as set by an arguable construction and application of the CBA," the court has no discretion "to reconsider the merits of the arbitration award, even if the parties argue that the award is based on factual errors or on misinterpretation of the CBA." Weber, 253 F.3d at 824; see also Beaird, 404 F.3d at 944 (holding that an arbitral award must be affirmed "'as long as the arbitrator [was] even arguably construing or applying the contract and acting within the scope of his authority'" (quoting Misco, 108 S. Ct. at 371)).

The arbitrability of a dispute may be challenged by a party seeking to vacate an arbitral award.  An arbitrator has the authority to rule on questions of arbitrability. Agere Systems, Inc. v. Samsung Electronics Co. Ltd., 560 F.3d 337, 341 (5th Cir. 2009).  Whether an agreement to arbitrate exists is a question for the arbitrator only when the parties have indicated a "clear willingness to arbitrate" that issue. First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1925 (1995); see also Oil, Chem., & Atomic Workers Int'l Union (AFL-CIO), Local 5-857, Labor Orgs. v. Conoco, Inc., 241 F.3d 1299, 1304 (10th Cir. 2001) (holding that in the context of the LMRA whether an agreement to arbitrate exists is a question for the arbitrator if the parties have "clearly and

-10-

unmistakably" agreed to arbitrate that question (internal quotation
marks omitted)).  Where the parties disagree over the scope of an
arbitration clause, the dispute is properly before the arbitrator
as long as "'the scope of an arbitration clause is fairly debatable
or reasonably in doubt.'" Downer v. Siegel, 489 F.3d 623, 626 (5th
Cir. 2007) (quoting Mar-Len of La., Inc. v. Parsons-Gilbane, 773
F.2d 633, 635 (5th Cir. 1985)).  If an issue of arbitrability has
been properly submitted to the arbitrator the "court's standard for
reviewing the arbitrator's decision about *that* matter should not
differ from the standard courts apply when they review any other
matter that parties have agreed to arbitrate." First Options, 115
S. Ct. at 1924.  Although First Options and Downer involved review
of awards arising under the Federal Arbitration Act ("FAA"), the
Fifth Circuit has stated that courts "may rely on [decisions
applying the FAA] for guidance in reviewing an arbitration award"
under Section 301 of the LMRA.   Int'l Chem. Workers Union v.
Columbian Chem. Co., 331 F.3d 491, 494 (5th Cir. 2003).  Therefore,
as to arbitrability issues the court will rely on First Options and
Downer.

A court has the power to enforce an arbitral award "*only* as
written." Brown v. Witco Corp., 340 F.3d 209, 216 (5th Cir. 2003).
If an award is not subject to vacatur, but is ambiguous in its
scope or application, the proper course is to "remand the award to
the arbitrator with instructions to clarify the award's particular
ambiguities." Id. (citing San Antonio Newspaper Guild Local No. 25

-11-

v. San Antonio Light Division, 481 F.2d 821, 824 (5th Cir. 1973)).
Clarification is within the purview of the arbitrator, not the
court -- "'[i]t is the arbitrator's construction which was
bargained for.'" San Antonio Newspaper, 481 F.2d at 825 (quoting
United Steelworkers of Am. v. Enterprise Wheel and Car Corp., 80
S. Ct. 1358, 1362 (1960)).

### III.  **Analysis**

As the party seeking to vacate the arbitral award, Houston
Refining bears the burden of proof.  See Lummus Global Amazonas,
256 F. Supp. 2d at 604.  Accordingly, to prevail on its motion for
summary judgment Houston Refining must establish as a matter of law
that vacatur is appropriate.  See Fed. R. Civ. P. 56(a).  The Union
may prevail on its motion by showing that there is an absence of
evidence to support vacatur.  See Celotex, 106 S. Ct. at 2554.

### A.  **Arbitrability**

#### 1.  Effectiveness of the 2006-09 CBA

Houston Refining argues that there was no extant CBA when the
grievance arose.[33]  Houston Refining admits that the REA extended
the terms of the 2006-09 CBA past January 31, 2009, but submits
evidence purporting to show that the REA expired in February of
2009, "upon the Union's ratification of the parties' tentative

---

[33]Houston Refining's Motion for Summary Judgment, Docket Entry
No. 15, p. 13; Houston Refining's Response, Docket Entry No. 16,
p. 12.

agreement" regarding the 2009-12 CBA.[34]  The parties agree that no
new CBA actually took effect until January of 2010.[35]   Houston
Refining therefore argues that when the grievance arose in May of
2009 the parties were not bound by any CBA or any arbitration
clause and that the arbitrator exceeded his authority by concluding
otherwise.[36]  Houston Refining also argues that the non-existence
of a CBA shows that Houston Refining never agreed to arbitrate the
dispute.[37]   The Union contends that the arbitrator's conclusion
should not be disturbed under a deferential standard of review.[38]

Houston Refining's argument that it never agreed to arbitrate
the dispute overlooks the existence of the Settlement Agreement.
Under the Settlement Agreement the parties agreed to submit to
arbitration the question of "whether or not an applicable
collective bargaining agreement was in effect at the time that a

---

[34]Houston Refining's Motion for Summary Judgment, Docket Entry
No. 15, p. 13; Houston Refining's Response, Docket Entry No. 16,
pp. 11-12.

[35]Brief in Support of Union's Motion for Summary Judgment,
Docket Entry No. 14, p. 5; Houston Refining's Motion for Summary
Judgment, Docket Entry No. 15, p. 8.

[36]Houston Refining's Motion for Summary Judgment, Docket Entry
No. 15, p. 13; Houston Refining's Response, Docket Entry No. 16,
p. 10.

[37]Houston Refining's Motion for Summary Judgment, Docket Entry
No. 15, p. 13; Houston Refining's Response, Docket Entry No. 16,
p. 12.

[38]Brief in Support of Union's Motion for Summary Judgment,
Docket Entry No. 14, p. 12.

-13-

particular grievance arose."[39]   The Settlement Agreement further provided that arbitration of "the grievances" that were currently pending before the Bankruptcy Court would proceed "in compliance with the arbitration procedures . . . in the applicable collective bargaining agreements."[40]   The parties therefore expressly agreed to allow the arbitrator to decide whether a CBA was in effect at the time the grievance arose and, if the arbitrator decided that issue in the affirmative, to arbitrate the grievance under the applicable CBA's arbitration procedures.   The court concludes that the Settlement Agreement evinces a "clear willingness to arbitrate" the issue of whether an arbitration agreement existed.   See First Options, 115 S. Ct. at 1925.   Therefore, the arbitrator's decision on the arbitrability matter is subject to the same standard of review as any other decision arising out of the CBA.   See id.; Weber, 253 F.3d at 824.

The arbitrator concluded that the REA extended the terms of the 2006-09 CBA through the time at which the 401(k) match was suspended and that Article 30 of the 2006-09 CBA therefore provided the authority for the grievance to be arbitrated.[41]   This conclusion was based on the absence of any evidence to show that either party

---

[39]Settlement Agreement, Ex. 12 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-14, p. 1.

[40]Id.

[41]Arbitrator's Decision, Ex. K to Complaint, Docket Entry No. 1-12, p. 23.

canceled the REA.[42]  The arbitrator therefore rejected the argument that Houston Refining now presents to the court -- i.e., that the REA expired when the parties ratified the 2009-12 CBA.  The arbitrator's conclusion drew its "essence" from the parties' agreement because the REA specifically provided for a method of cancellation -- 24-hour notice[43] -- and that method was never invoked.  See Weber, 253 F.3d at 824.  For the same reason, the arbitrator did not fashion "his own brand of industrial justice."  See id.  The court therefore concludes that in deciding the applicability of the terms of the 2006-09 CBA the arbitrator was, at a minimum, "arguably construing or applying the contract and acting within the scope of his authority."  See Beaird, 404 F.3d at 944.  The court will not disturb the arbitrator's ruling on this matter.

    2.   Scope of the Arbitration Clause

Houston Refining also contends that, even if the 2006-09 CBA was extant, the applicable arbitration clause did not cover the parties' dispute.  Houston Refining argues that the clause is only applicable to "grievances," a term that does not include a challenge to the suspension of the 401(k) match.[44]  Houston Refining

---

[42]Id.

[43]Rolling Extension Agreement, Ex. 5 to Houston Refining's Motion for Summary Judgment, Docket Entry No. 15-7.

[44]Houston Refining's Motion for Summary Judgment, Docket Entry No. 15, p. 14, n.60.

further argues that because the specific terms of the 401(k) plan
were not "wholly incorporated" into the 2006-09 CBA, the Union's
grievance does not fall under the arbitration clause and instead is
controlled by the claims procedures of the 401(k) plan.[45]  The court
finds no merit in these arguments.

Houston Refining's arguments again neglect the terms of the
Settlement Agreement.  The Settlement Agreement stipulated that the
parties would arbitrate the Union's grievance in accordance with
the applicable arbitration procedures, yet Houston Refining now
contends that the grievance did not fall within the applicable
arbitration clause.  The court concludes that under the terms of
the Settlement Agreement Houston Refining agreed to submit to the
arbitrator the issue of whether the arbitration clause covered the
Union's grievance.  At a minimum, the dispute was properly
submitted to the arbitrator because the scope of the arbitration
clause is, as will be discussed below, "fairly debatable or
reasonably in doubt."  See Downer, 489 F.3d at 626.  The arbitra-
tor's decision as to scope is therefore subject to deferential
review.  See First Options, 115 S. Ct. at 1924.

The arbitration clause at issue provides that "grievances" --
"any difference regarding wages, hours or working conditions
between the parties or between [Houston Refining] and an employee

---

[45]Id. at 15-18; Houston Refining's Response, Docket Entry
No. 16, pp. 12-17.

covered by this Agreement" -- may be subject to arbitration.[46]  The
arbitrator concluded that Houston Refining violated the 2006-09 CBA
by not allowing "represented employees" to "continue participation
in the existing, unchanged benefits plan for the term of the [2006-
09 CBA]," as Article 40 requires.[47]  The challenge to this violation
constituted a "grievance," according to the arbitrator, because the
suspension of the 401(k) match was a "form of wages."[48]   The
arbitrator's conclusion that 401(k) contributions are of "monetary
value" and therefore a form of wages is at least an arguable
construction of the CBA.[49]

        Furthermore, whether the terms of the 401(k) plan were "wholly
incorporated" into the 2006-09 CBA is irrelevant.  The basis of the
Union's challenge was not the 401(k) plan itself.  Similarly, the
grievance is not controlled by claims procedures because the Union
has not made a claim for benefits under the 401(k) plan.  Instead,
the Union challenged Houston Refining's alleged violation of
Article 40.  In the course of concluding that the alleged violation
constituted a grievance the arbitrator did not need to reference
the terms of the 401(k) plan itself -- the arbitrator construed

---

        [46]Articles of Agreement, Ex. 4 (cont.) to Houston Refining's
Motion for Summary Judgment, Docket Entry No. 15-6, art. 30, ¶ 1.

        [47]Arbitrator's Decision, Ex. K to Complaint, Docket Entry
No. 1-12, p. 50.

        [48]Id. at 28.

        [49]Id.

only the 2006-09 CBA.   The court therefore concludes that the arbitrator did not exceed his authority by determining that the scope of the arbitration clause included the Union's grievance.

**B.   Substance of the Award**

1.   <u>Vacatur</u>

Houston Refining moves to vacate the award on the ground that it is "so ill-defined as drafted that its enforcement has the potential to cause a significant injustice if it is not vacated."[50] Houston Refining argues that the award places it in an "impossible situation" in light of its responsibilities under the Internal Revenue Code ("IRC") and the Employee Retirement Income Security Act ("ERISA").[51]   Houston Refining also argues that the award produces an "absurd result."[52]   The Union responds that Houston Refining's obligations under the 2006-09 CBA are at issue here, not any obligations under the IRC or ERISA.[53]   The Union also contends that the award simply requires Houston Refining "to make its participating, represented employees whole for the sums they lost by [Houston Refining's] suspension of the 401(k) match."[54]

---

[50]Houston Refining's Motion for Summary Judgment, Docket Entry No. 15, p. 19.

[51]<u>Id.</u>

[52]<u>Id.</u> at 19-20.

[53]Brief in Support of Union's Motion for Summary Judgment, Docket Entry No. 14, p. 19.

[54]<u>Id.</u>

The applicable standard of review requires the court to assess whether the arbitrator "acted within the ambit of his authority as set by an arguable construction and application of the CBA." See Weber, 253 F.3d at 824.  The court has already discussed, and upheld under Weber, the arbitrator's conclusion that Houston Refining violated the 2006-09 CBA.  The resulting award provided that under Article 40 Houston Refining should have allowed "represented employees" to "continue participation in the existing, unchanged benefits plan for the term of the Collective Bargaining Agreement."[55]  Therefore in rendering this award the arbitrator simply interpreted the CBA; the arbitrator's duty in interpreting the CBA did not involve considerations of Houston Refining's responsibilities under the IRC and ERISA.  The arbitrator concluded that Houston Refining violated a particular provision of Article 40 and that the appropriate remedy was the performance of that particular provision of Article 40.  This conclusion is drawn from the essence of the CBA and is not the result of the arbitrator's own brand of industrial justice.  See Weber, 253 F.3d at 824.

Houston Refining's contention that the award produces an absurd result is premised on the assumed propriety of the suspension of the 401(k) match.  Houston Refining argues that the represented employees could not possibly have participated in a match program that no longer existed, for Houston Refining had

---

[55]Arbitrator's Decision, Ex. K to Complaint, Docket Entry No. 1-12, p. 50.

already suspended the match.[56]  But the arbitrator's award makes clear that the violation of the 2006-09 CBA consisted of Houston Refining's suspending the match *before* allowing represented employees the opportunity to continue within the plan.[57]  Houston Refining also argues that "[a] much more plausible and harmonious reading of [the relevant Article 40 language] would be that the provision obligates [Houston Refining] to fulfill certain procedural requirements in connection with amending the [401(k)] Plan."[58]  But the court lacks authority to vacate an award where the arbitrator, acting within the scope of his authority, has "committed serious error," see Beaird, 404 F.3d at 944, let alone where there may exist a more plausible and harmonious interpretation of the CBA.  In any event, the arbitrator's decision is based on an arguable construction of Article 40 -- Article 40 contains no language that allows Houston Refining to fully perform under the contract by simply fulfilling "certain procedural requirements."  Article 40 simply provides that if the Union elects exclusion, the represented employees should be permitted to continue in the unchanged benefits plan.  The court therefore concludes that vacatur is not appropriate.

---

[56]Houston Refining's Motion for Summary Judgment, Docket Entry No. 15, p. 20.

[57]Arbitrator's Decision, Ex. K to Complaint, Docket Entry No. 1-12, p. 50.

[58]Houston Refining's Motion for Summary Judgment, Docket Entry No. 15, p. 20.

2.   Remand

In its motion for summary judgment the Union acknowledges that
remand to the arbitrator for clarification of the award may be
appropriate.[59] While the merits of an arbitrator's decision are not
subject to the court's review as long as the arbitrator has acted
within the scope of his authority and has arguably construed the
contract, the court must determine whether the arbitration award is
ambiguous and whether remand to the arbitrator is appropriate.
Brown, 340 F.3d at 216; San Antonio Newspaper, 481 F.2d at 824.   In
San Antonio Newspaper the Fifth Circuit considered a challenge to
an arbitral award that arose out of a collective bargaining
agreement and was issued in favor of a discharged employee.  Id. at
822.  The award provided that the "[g]rievant shall be made whole
for any loss in earnings."   Id.   Reasoning that the award was
ambiguous to the extent that it was silent as to severance pay and
any loss-mitigating earnings received from other employers, the
court concluded that "[t]he normal course of action . . . is for
the court to remand the matter to the original arbitrator for
clarification."  Id. at 825.[60]

The court concludes that the award in this case is ambiguous.
The  arbitrator  found  that  because  the  Union  had  elected

_____

[59]Brief in Support of Union's Motion for Summary Judgment,
Docket Entry No. 14, p. 19.

[60]The court noted, however, that a different arbitrator had
already clarified the award.  San Antonio Newspaper, 481 F.2d at
825.   Therefore, the court found it "pointless" to have the
original arbitrator perform the very same task.   Id.

"'exclusion'" from the proposed suspension of the 401(k) match,
"'represented employees'" should have "'continue[d] participation
in the existing, unchanged benefits plan for the term of the
Collective Bargaining Agreement.'"[61]  The "existing, unchanged
benefits" refer to the 401(k) match and the "term of the Collective
Bargaining Agreement" refers to the time during which the 2006-09
CBA was extant.  Missing, however, are instructions as to how the
award should be implemented.  Like the award in San Antonio
Newspaper, the award here does not explicitly take into account
external factors that may have an effect on the value of the award.
While severance pay and loss-mitigation are not relevant here,
clarification is needed as to the value of the 401(k) contributions
that the represented employees are entitled to, taking into account
interest and the performance of the 401(k) plans at issue.  The
parties may also ask the arbitrator to clarify other remedial
issues, such as those raised in Houston Refining's Complaint
(Docket Entry No. 1 at pp. 24-27) and in the Union's Motion for
Summary Judgment (Docket Entry No. 14 at p. 21).

## IV.  Attorney's Fees

In its motion for summary judgment the Union requests an award
of attorney's fees.[62]  In the Fifth Circuit "'[a] party to an

---

[61]Arbitrator's Decision, Ex. K to Complaint, Docket Entry
No. 1-12, p. 50 (quoting Articles of Agreement, Ex. 4 (cont.) to
Houston Refining's Motion for Summary Judgment, Docket Entry
No. 15-6, art. 40, § III, ¶ 5).

[62]Brief in Support of Union's Motion for Summary Judgment,
Docket Entry No. 14, p. 22.

arbitral award is not entitled to the attorney's fees it incurs in enforcing that award unless the noncomplying party's refusal to abide by the award was without justification.'" <u>Glover v. IBP, Inc.</u>, 334 F.3d 471, 477 (5th Cir. 2003) (quoting <u>Amalgamated Meat Cutters, Local 540 v. Great Western Food Co.</u>, 712 F.2d 122, 125 (5th Cir. 1983)).  If the party seeking to vacate the arbitral award presents non-frivolous arguments, attorney's fees should be denied. <u>Glover</u>, 334 F.3d at 477. Even though the court concludes that the arbitral award is enforceable the grounds on which Houston Refining opposes the award are non-frivolous.  The court therefore concludes that Houston Refining's refusal to abide by the award was not "without justification."  The Union's request for attorney's fees will be denied.

## V.  <u>Conclusion and Order</u>

Pursuant to the applicable standard of review the court concludes that the arbitrator's decision drew its essence from the 2006-09 CBA and was not the arbitrator's own brand of industrial justice.  Therefore, Houston Refining has failed to establish as a matter of law that the arbitrator's award should be vacated. Moreover, the Union has carried its burden to show that there is an absence of evidence to support Houston Refining's claim that the award should be vacated.  Although the award is not subject to vacatur, the court also concludes that remand to the arbitrator for clarification is appropriate.  Accordingly, Houston Refining's Motion for Summary Judgment (Docket Entry No. 15) is **DENIED**, and

the Union's Motion for Summary Judgment (Docket Entry No. 13) is **GRANTED IN PART** and **DENIED** as to the request for attorney's fees. The matter will be remanded to Arbitrator Charles G. Griffin for clarification of the award.

**SIGNED** at Houston, Texas, on this the 14th day of June, 2013.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-24-